REVISED APRIL 3, 2013

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 19, 2013

Lyle W. Cayce
Clerk

No. 12-10511

INNOVATION FIRST INTERNATIONAL, INC.,

Plaintiff - Appellant

v.

ZURU, INC.,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, DAVIS, and CLEMENT, Circuit Judges.
PER CURIAM:[*]

Innovation First International, Inc. ("Innovation First") brought this suit for misappropriation of trade secrets against Zuru, Inc. ("Zuru") in Texas state court. After the case was removed to federal court, the district court dismissed the case on forum non conveniens grounds. We AFFIRM.

FACTS AND PROCEEDINGS

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Innovation First is a Texas corporation headquartered in Greenville, Texas that develops robotic toys at facilities in Texas and China. According to Innovation First, one of its Chinese employees, Xiaoping Lu, worked at its facility in China designing a robotic toy fish as part of its HEXBUG line of products. Lu allegedly incorporated several of Innovation First's trade secrets into this design. After resigning from Innovation First in late August 2011, Lu entered into an agreement in China with Zuru, a British Virgin Islands toy manufacturer headquartered in China. Under the agreement, Zuru would produce and market a robotic toy fish that Lu had allegedly designed.

In early October 2011, Innovation First and Zuru both participated in the Fall Toy Preview in Dallas, Texas. At this toy fair, Innovation First learned that Zuru was marketing the robotic fish designed by Lu. Innovation First promptly filed suit in Texas state court against Zuru, alleging that Zuru had misappropriated Innovation First's trade secrets because Zuru's toy fish used HEXBUG proprietary technology. Innovation First sought an injunction to prevent Zuru from marketing any product incorporating the secret HEXBUG technology, as well as damages. Zuru removed the case to federal court and filed motions to dismiss for lack of personal jurisdiction and forum non conveniens.

The district court found that it had personal jurisdiction over Zuru, but nevertheless dismissed the case for forum non conveniens. It first determined that China was an available and adequate alternate forum. Next, it recognized that it owed deference to the plaintiff's choice of forum, but found that the level of deference was "somewhat lessened" because Innovation First is "an American company that engages in international business." Then it addressed each of the relevant private and public interest factors.

With regard to the private interest factors, it found that because "nearly all witnesses and documents relating to the alleged trade secrets misappropriation are located in China," the relative ease of access to sources of

proof weighed in favor of dismissal. It also found that although it could not compel the Chinese witnesses in this case, including Lu, to testify, Chinese courts would have this power. Moreover, it found that because of the cost of transporting both companies' Chinese employees who were witnesses, as well as any third party witnesses who would have to travel from China if the case was tried in Texas, a Chinese forum would minimize the cost of obtaining willing witnesses at trial. It thus determined that the ability to secure witnesses favored trial in China. Finally, it found that other practical problems – the expense of translating documents and employing interpreters – did not weigh in favor of one forum or the other, because these problems would exist whether or not such translation was from English to Chinese for a Chinese forum or Chinese to English for the Texas court. Taking all the private interest factors together, it concluded that Zuru had shown that they weighed in favor of a Chinese forum.

The court next turned to the public interest factors. Because neither party contended that administrative difficulties favored one forum or the other, the court found that this factor did not weigh in either direction. Similarly, neither party argued that the law of one forum or the other would apply. Thus, neither party suggested that the interest in having the trial in a forum familiar with the law to be applied weighed for or against dismissal. The district court therefore found that this factor did not tilt in either forum's favor. And the court noted that neither party addressed the related interest in avoiding a conflict with foreign law, although it observed that this factor "would likely tilt in favor of dismissal if in fact Chinese law were applied." With respect to the local interest in the resolution of controversies at home, the court found that "China has a far greater interest in regulating the conduct of companies doing business in China." The court explained that:

3

> Lu worked for [Innovation First] exclusively in China; he allegedly misappropriated trade secrets in China; he signed an employment separation agreement in China; he negotiated and signed an agreement with Zuru in China. Zuru, a company whose primary place of business is in China, began marketing and producing new products using the allegedly misappropriated secrets in China. Given these facts, this matter can properly be characterized as a Chinese controversy.

It concluded that "[t]his factor weighs heavily in favor of dismissal." It also found that the final public interest factor, the burden of jury duty on citizens of an unrelated forum, favored dismissal because a dispute that was based on trade secrets that were allegedly misappropriated in China was a controversy that arose in China. This finding weighed against imposing the burden of jury duty on the people of a community that has "no relation to the litigation."

Based on its determination that an adequate alternative forum was available and its consideration of each of the factors relevant to the forum non conveniens analysis, the district court granted Zuru's motion to dismiss. Innovation First timely appeals.

## STANDARD OF REVIEW

"The standard of appellate review for a denial of a motion to dismiss for forum non conveniens is narrow." In re Air Crash Disaster Near New Orleans, La. on July 9, 1982, 821 F.2d 1147, 1166 (5th Cir. 1987), vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez, 490 U.S. 1032 (1989). The question "is not whether this Court . . . would as an original matter have dismissed the action"; we "cannot reverse a district court's granting of a motion to dismiss for forum non conveniens unless the district court abused its discretion." Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 341 (5th Cir. 1999) (citation and internal quotation marks omitted).

In ruling on a motion to dismiss for forum non conveniens, "[d]istrict courts are constrained to follow [a specific] procedural framework." McLennan

v. Am. Eurocopter Corp., Inc., 245 F.3d 403, 424 (5th Cir. 2001). The court's "task on appeal is merely to review the lower court's decisionmaking process to ensure compliance with this framework." Id. (internal quotation marks and citation omitted). Thus, "a district court abuses its discretion when it grants a motion to dismiss without oral or written reasons[,] if it fails to address and balance the relevant principles and factors," Dickson Marine, 179 F.3d at 341, or if its balancing of these factors is unreasonable, In re Air Crash, 821 F.2d at 1167.

## DISCUSSION

Innovation First contends that the district court abused its discretion when it granted Zuru's motion to dismiss for forum non conveniens, arguing that the district court failed to afford its choice of forum proper deference, made inconsistent factual findings, and mis-weighed the relevant factors.[1]

"The doctrine of forum non conveniens presupposes at least two forums where the defendant is [amenable] to process and simply furnishes criteria for choice between them." Dickson Marine, 179 F.3d at 342. A defendant seeking dismissal on this basis therefore must show that there is an alternate forum that is both available and adequate. See McLennan, 245 F.3d at 424. Innovation First does not challenge on appeal the district court's determination that China is an available and adequate alternative forum.

Once the defendant establishes that there is a satisfactory alternate forum, the district court must balance a defined set of private and public interest

---

[1] Innovation First also argues that the district court abused its discretion by failing to include a return jurisdiction clause in its dismissal order to allow Innovation First to reinstate its suit in the district court, should the action become impossible in China. Although "the district court is given the discretion to determine the conditions of dismissal," Baris v. Sulpicio Lines, Inc., 932 F.2d 1540, 1551 (5th Cir. 1991), upon granting a motion to dismiss for forum non conveniens, "it must finally ensure . . . that if the defendant obstructs [suit] in the alternative forum that the plaintiff may return to the American forum, In re Air Crash, 821 F.2d at 1166. Where, as here, defendants have agreed to submit to jurisdiction in the alternate forum, dismissal without prejudice is sufficient to satisfy this requirement.

factors to determine whether dismissal is warranted. See Dickson Marine, 179 F.3d at 341-43. The focus of this inquiry is convenience. See id. at 342; see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 429 (2007) ("A federal court has discretion to dismiss [when] . . . trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." (citation, internal quotation marks, and alterations omitted)). The private interest factors "relate primarily to the convenience of the litigants," and are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; [and] (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." Syndicate 420 at Lloyd's London v. Early Am. Ins. Co., 796 F.2d 821, 831 (5th Cir. 1986) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)). The public interest factors concern whether the plaintiff's chosen forum would be unnecessarily burdensome to the court or the community. See In re Air Crash, 821 F.2d at 1154, 1165-66. They are "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." McLennan, 245 F.3d at 424 (citation and internal quotation marks omitted).

Moreover, "the plaintiff's choice of forum is entitled to great weight in the balancing of factors, and unless the balance strongly favors the defendants, the plaintiff's choice of forum should not be overturned." Syndicate, 796 F.2d at 830. "When the plaintiff's choice is not its home forum, however, [this weight] in the

plaintiff's favor 'applies with less force,'" Sinochem, 549 U.S. at 430 (citation omitted), because:

> When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

Piper, 454 U.S. at 255-56. But neither the citizen's choice of his home forum, see In re Air Crash, 821 F.2d at 1164 n.26 ("[D]ismissal should not be automatically barred when a plaintiff has filed suit in his home forum." (citation and quotation marks omitted)), nor any one private or public interest factor is dispositive, see id. at 1163. Nevertheless, we have held that where the private interest factors as a whole favor dismissal, a court may dismiss a case on forum non conveniens grounds. See Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G., 955 F.2d 368, 376 (5th Cir. 1992) ("Given the availability of an adequate forum in the Netherlands and the balance of private interest factors favoring dismissal, the district court had no need to consider the public interest factors." (citation omitted)). Similarly, with regard to the public interest factors, we have explained that:

> [E]ven when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant a forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute or that foreign law will predominate if jurisdiction is retained.

In re Air Crash, 821 F.2d at 1165-66 (citation and quotation marks omitted).

Innovation First argues that the district court failed to afford its choice of forum proper deference for two reasons. First, it claims that the district court failed to apply the standard announced by the Supreme Court in Koster v. American Lumbermens Mutual Casualty Co., 330 U.S. 518 (1947). In that case,

the Court stated that a plaintiff should not be deprived of his home forum unless there are facts showing "oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent" or that "make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." Id. at 524. However, in Gulf Oil Corp. v. Gilbert, decided on the same day as Koster, the Supreme Court laid out the private and public interest factors that structure courts' analysis of forum non conveniens. 330 U.S. 501, 507-09 (1947). We have held that Koster and Gilbert "establish a single 'balancing of conveniences' approach," which courts conduct by weighing the factors specified in Gilbert. In re Air Crash, 821 F.2d at 1163 n.24. The district court indisputably balanced the Gilbert factors, therefore it applied the correct legal standard.

Second, Innovation First cites to precedent from other circuits as well as a 1955 case from this court, Burt v. Isthmus Development Co., 218 F.2d 353, 357 (5th Cir. 1955), for the proposition that, except in extreme circumstances, a motion for dismissal due to forum non conveniens should not be granted when an American plaintiff files suit in his home forum. However, Burt dealt not with a citizen plaintiff who filed in his home forum, but with a New York plaintiff who brought suit against a Texas corporation in the defendant's home forum. See id. at 354. The corporation nevertheless moved to dismiss on forum non conveniens grounds because the law governing the contract at issue was Mexican law and the transaction occurred in Mexico. See id. at 355. The court concluded that under these inapposite circumstances, dismissal on forum non conveniens grounds was not proper. See id. at 357-58.

Furthermore, this circuit has more recently held that a district court in Louisiana did not err when it dismissed Louisiana plaintiffs' case against a Swiss corporation on forum non conveniens grounds because the private interest

factors weighed in favor of a Swiss forum – even though "the district court concluded that the public interest factors might point slightly toward Louisiana as the appropriate forum." Dickson Marine, 179 F.3d at 334-35, 343. In Dickson Marine, the district court found that the transaction was negotiated in Switzerland, most of the evidence was in Switzerland, and process could be compelled by Swiss courts. See id. at 343. This court therefore agreed with the district court that the private interest factors "weigh[ed] heavily in favor of Switzerland as the most convenient forum." Id. (emphasis added).

The facts of this case are quite similar to those in Dickson Marine. The district court recognized that Lu allegedly designed the toy fish at Innovation First's facility in China; Lu negotiated an agreement with Zuru in China; and the robotic fish produced according to that agreement was developed in China. The district court also reasonably concluded that most of the records and witnesses are located in China and their production or testimony can be compelled by Chinese courts. Comparing the facts of this case to those in Dickson Marine, we cannot conclude that the district court here unreasonably determined that the private interest factors weighed "strongly" in favor of dismissal.

Innovation First also contends that the district court's ruling on forum non conveniens is inconsistent with its findings on personal jurisdiction. Specifically, the district court found that it could exercise personal jurisdiction over Zuru because any burden on Zuru from litigating in Texas would not be "unreasonable or unfair," and Texas would "likely provide Plaintiff the greatest level of convenience." Innovation First argues that these findings preclude the district court from concluding that this case meets the standard for dismissal on forum non conveniens grounds.

Innovation First misconstrues the forum non conveniens analysis. While determination of personal jurisdiction focuses on fairness, forum non conveniens

addresses the practical concern of convenience. See Dickson Marine, 179 F.3d at 342; see also Syndicate, 796 F.2d at 831 ("In a nutshell, the practical problems of trying this dispute in Louisiana are such that the proceeding is likely to prove difficult, lengthy, and expensive. Such a result cannot satisfy Piper's instruction that the trial of a case should proceed in the forum where it will prove 'easy, expeditious and inexpensive.'" (quoting Piper, 454 U.S. at 241 n.6)). While it may be fair to hale Zuru into court in Texas – the Constitution is not offended – it may nevertheless be so inconvenient to require Zuru to defend itself against a particular claim in Texas that, as a practical matter, a district court may conclude that dismissal is warranted. Under Innovation First's understanding, no case could ever be dismissed for forum non conveniens: as soon as a district court determines that it is fair to exercise jurisdiction over a defendant, that defendant will, according to Innovation First, not be able to satisfy the standard that the forum is unnecessarily (or unfairly) burdensome. See In re Air Crash, 821 F.2d at 1164 n.26. This position is not supported by logic or precedent.

The remainder of Innovation First's argument consists of challenging how the district court weighed the relevant private and public interest factors. It invites us to disregard the abuse of discretion standard and re-weigh these factors. It claims that the core of the tort took place in Texas; it suggests that more of the sources of proof are located in Texas than the court admitted; it argues that the district court would not find it necessary to compel any witnesses because they are all employees or allies of the two parties; it contends that technological advances obviate the need to consider the burden of transporting documents;[2] and it asserts that the district court assigned inordinate weight to the cost of witness travel because Zuru sends its sales representatives to Texas,

---

[2] Cf. In re Volkswagen of Am., Inc., 545 F.3d 304, 316 (5th Cir. 2008) ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments [in copying technology and information storage] does not render this factor superfluous.").

depositions could be used in lieu of live testimony, and, in any event, Zuru has the financial resources to fly witnesses to Texas.

Addressing the public interest factors, Innovation First argues that the district court should have weighed Texas's interest in protecting its companies from trade secret misappropriation more heavily. Although this argument is persuasive, the district court considered the state's interest in deciding the controversy at home, and given that the bulk of the dispute occurred in China, we do not believe that its conclusion on this factor – or any of the others – was unreasonable.[3] In short, we decline Innovation First's invitation to "substitute[ our] own judgment for that of the District Court." Piper, 454 U.S. at 257.

## CONCLUSION

The district court applied the proper legal framework when it addressed Zuru's motion to dismiss for forum non conveniens, considered all the relevant private and public interest factors, and balanced them reasonably. Therefore, the district court did not abuse its discretion and we AFFIRM its decision to dismiss this case.

---

[3] See Syndicate, 796 F.2d at 831-32 ("Although there is a 'local interest in having local controversies decided at home,' this case can hardly be characterized as a local controversy. The primary claims in this litigation arise from the contention of a British insurance syndicate – Syndicate 420 – that it should not be liable on reinsurance issued to an Alabama corporation – Early American – and a Delaware corporation – World. These claims gave rise, in turn, to direct actions by those parties against the E & O Underwriters, a group of predominantly foreign insurers. Granted, the underlying risks for which the reinsurance was issued are located in Louisiana, but that fact does not make this case a 'local controversy.' We simply discern no substantial interest on the part of Louisiana in retention of this litigation in the Eastern District.").